**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| KIMBERLY C. S.[1], | : | Case No. 3:21-cv-00161 |
| | : | |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff filed an application for Supplemental Security Income (SSI) on June 20,

2019. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at

Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not

eligible for benefits because she is not under a "disability" as defined in the Social

Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff

subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award

of benefits, or in the alternative, for further proceedings. The Commissioner asks the

Court to affirm the non-disability decision. This case is before the Court on Plaintiff's

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials.")

Statement of Errors (Doc. 10), the Commissioner's Memorandum in Opposition (Doc. 14), Plaintiff's Reply (Doc. 15), and the administrative record (Doc. 8).

## II.    BACKGROUND

Plaintiff was thirty-one years old on the date the application was filed. Accordingly, Plaintiff was considered a "younger person" for purposes of determining her entitlement to disability benefits. 20 C.F.R. § 416.963(c). Plaintiff has a "limited" education. 20 C.F.R. § 416.964(b)(3).

The evidence in the administrative record is summarized in the ALJ's decision. (Doc. 8-2, PageID 44-57), Plaintiff's Statement of Errors (Doc. 10), the Commissioner's Memorandum in Opposition (Doc. 14), and Plaintiff's Reply (Doc. 15). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III.    STANDARD OF REVIEW

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ

are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); see 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV.   FACTS

### A.   The ALJ's Findings of Fact

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the regulations. *See* 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

Step 1:     Plaintiff has not engaged in substantial gainful activity since June 20, 2019, the SSI application date.

Step 2:     She has the severe impairments of "lumbar radiculopathy, osteoarthritis of the left hip and left knee, asthma, migraines, hypertension, morbid obesity, bipolar disorder, post-traumatic stress disorder, depression, generalized anxiety disorder, borderline personality disorder."

Step 3:     She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

4

Step 4:    Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work with the following exceptions: "Standing and/or walking for approximately 4 hours and sitting for approximately 4 hours in an 8-hour work day, with normal breaks. No more than occasional balancing, stooping, crouching, kneeling, crawling, or climbing of ramps and stairs. No climbing of ladders, ropes, or scaffolds. [Plaintiff] should avoid concentrated exposure to poorly ventilated areas, industrial chemicals, and environmental irritants, such as fumes, odors, dust, and gas. [Plaintiff] should avoid hazardous machinery and unprotected heights. [Plaintiff] is limited to performing simple, routine, and repetitive tasks, performed in a work environment free of fast paced-production requirements, involving only simple, work-related decisions, with few, if any, work place changes. No more than occasional interaction with the co-workers and the general public. No tandem tasks."

Step 4:    She has no past relevant work.

Step 5:    Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

(Doc. 8-2, PageID 46-57.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 57.)

The ALJ also found, in the alternative, that Plaintiff can engage in a sedentary level of work, and that Plaintiff can perform sedentary jobs exist in significant numbers in the national economy. (Doc. 8-2, PageID 56.)

### B.    Plaintiff's Physical Symptoms And Treatment History

Plaintiff had surgery as a child to address developmental hip dysplasia. (Doc. 8-2, PageID 68.) In May 2019, she sought treatment for left hip pain. She had decreased range of motion of the left hip, tenderness of the lumbar spine, a significantly antalgic gait, and

5

mildly decreased strength of the knee. An x-ray showed degenerative change in her left hip. She received an injection in her left hip, and was referred for pain management and physical therapy. (Doc. 8-7, PageID 507-09.)

In June 2019, Plaintiff was evaluated for physical therapy. She was in significant pain upon arrival because the parking lot was closed and she walked a long distance without an assistive device. (Doc. 8-25, PageID 679.) The examination showed decreased range of motion with pain of the left hip and lumbar spine, and decreased strength of the bilateral hips. She had an antalgic gait. The physical therapist suggested that Plaintiff use a walker to reduce fall risk and pain. (Doc. 8-7, PageID 501-04.) Plaintiff's physician prescribed a walker. (*Id.* at PageID 500, 592.)

In July 2019, Plaintiff was tearful and complained of left hip pain. She had been having falls and her left leg was giving way. She had pain with any range of motion of the left hip and left knee. She had a significantly antalgic gait. An x-ray showed moderate osteoarthritis of the left knee. Plaintiff's physician noted: "We discussed using a **cane** to help with fall prevention and support." (Doc. 8-3, PageID 93 (emphasis in original).)

In July 2019, Plaintiff's physical therapist advised her that she "is not going to benefit from [physical therapy] unless she is compliant [with] recommendation to utilize [assistive devices] to avoid falls[,] to allow exercises to be tolerated[,] to strengthen pelvis and hip stabilizers." (Doc. 8-7, PageID 496, 653.) Plaintiff subsequently stopped physical therapy due to increased pain. (Doc. 8-54, PageID 744.)

In August 2019, Plaintiff stated that "she has constant pain and numbness in her

6

left hip and that her leg gives out on her randomly." She complained of "constant pain and stiffness in her lower back." She could stand, walk and sit for five minutes at a time, and lift and carry ten pounds. She used a walker, but still had some falls. She could not do chores and errands due to her physical conditions and pain. (Doc. 8-3, PageID 92.)

In August 2019, Plaintiff complained of lumbar spine and left hip pain. A straight leg raise test was positive on the left side. She had decreased range of motion of the lumbar spine with pain, tenderness to palpation of the lumbar spine, and decreased strength of the left lower extremity. She had a normal gait. (Doc. 8-3, PageID 93.) Her pain was persistent, throbbing, shooting, stabbing and sharp, and was improved by Excedrin. (Doc. 8-7, PageID 600.)

In August, September and October 2019, Plaintiff received injections in her left hip and lumbar spine to manage her pain. (Doc. 8-3, PageID 108; Doc. 8-7, PageID 539, 558-59; Doc. 8-144, PageID 924; Doc. 8-153, PageID 942.)

In October 2019, Plaintiff reported that the injections had not helped her pain, which continued to be intense. (Doc. 8-7, PageID 557, 590.) She was noted to have tried physical therapy, injections, NSAIDS, neuropathic agents, and muscle relaxers. She was taking a muscle relaxer (Robaxin) and Tylenol as needed. She had an antalgic gait and 4/5 strength in her lower left extremities. She was diagnosed with lumbar pain, left hip pain, sacroiliitis, and osteoarthritis of the left hip. (*Id*. at PageID 558.) She was prescribed Gabapentin to manage her pain. (*Id*.) However, she stopped using Gabapentin in or before January 2020 because it caused shortness of breath. (Doc. 8-52, PageID 740.)

7

In November 2019, Plaintiff stated that her pain was very intense on most days, but she was told that she cannot have hip replacement surgery because of her age and weight. She was able to lift a gallon of milk. (Doc. 8-3, PageID 107.) A treatment note stated that Plaintiff had average energy, was in a "much better" mood, and reported that a new prescription decreased pain in her legs and hips. (*Id*. at PageID 108.)

In April 2020, Plaintiff reported that she had to walk with a cane. (Doc. 8-37, PageID 704.) In June 2020, she received an epidural injection for her back pain and radiculopathy. (Doc. 8-118, PageID 872.) In July 2020, she received a left hip injection for her left hip pain. (Doc. 8-105, PageID 846.)

In August 2020, Plaintiff attempted physical therapy but was unable to tolerate it due to severe pain. (Doc. 8-83, PageID 802; Doc. 8-84, PageID 804.) She reported that she used a cane as needed. (Doc. 8-98, PageID 832.)

In September 2020, Plaintiff told her treating physician that at times "she has been completely immobile due to her left hip pain." She also had pain in her back, down the back of her leg, and into her foot. She also felt like "her tail bone is shifting" and her hip "is popping out." (Doc. 8-157, PageID 965.) She ambulated with antalgic gait, sat without putting weight on her left side, and had significant discomfort with hip flexion and internal rotation. (*Id*. at PageID 967.) An x-ray of the hip showed severe changes "including loss of contour of the femoral head … and complete loss of joint space." The impression was "end stage osteoarthritis of the left hip." (*Id*. at PageID 969.) Her physician recommended a left total hip replacement. (*Id*.) She was scheduled to have that

8

surgery shortly after the October 2020 hearing before the ALJ. (Doc. 8-2, PageID 68-69.)

During the hearing, Plaintiff testified that she could not work because she was immobilized, needed assistance with taking a bath and dressing, and could not shop for groceries, pick up her son, change his diaper, or give him a bath. (Doc. 8-2, PageID 72, 77.) She only left the house for medical appointments. (*Id*. at PageID 77.) She could not sit or stand for too long, and had to consistently move. (*Id*. at PageID 73.) She stated: "Standing for too long hurts. Sitting for too long hurts. My tailbone shifts a lot. I have muscle spasms throughout my whole entire left side, up into my back – from my foot to my back." (*Id*. at PageID 77.) She could not lift more than a gallon of milk. (*Id*. at PageID 73.) She could sit for only fifteen minutes at a time. (*Id*. at PageID 75.)

Plaintiff testified that she had received injections to manage her pain, but none helped except an epidural injection that helped her back pain "a bit." (Doc. 8-2, PageID 75-76.) She had not been prescribed any pain medications. (*Id*. at PageID 79.)

When asked whether she used assistive devices to move around, Plaintiff stated:

> I do. I use my cane more than anything. ***It's not prescribed;***
> ***my mother gave it to me.*** But I do use my walker when I'm
> going to have to go to, like, hospitals, or distance
> [INAUDIBLE] doctor's appointments because it's easier to
> walk with the walker. But around the house I use the cane.

(Doc. 8-2, PageID 73 (emphasis added).) Plaintiff testified that assistive devices helped keep her from falling when her legs gave out. (*Id*. at 76-77.)

9

### C. State Agency Reviewing Physicians Elizabeth Das, M.D. and Gail Mutchler, M.D.

On September 3, 2019, state agency reviewing physician Dr. Das stated that Plaintiff's complaint that she can only lift and carry up to 10 pounds due to pain was inconsistent with medical evidence showing only slightly decreased strength of the left lower extremity, and normal findings of the upper extremities. (Doc. 8-3, PageID 96.) Dr. Das opined that Plaintiff was limited to lifting and carrying up to 20 pounds occasionally and 10 pounds frequently. (*Id*.) She could stand and walk for a total of four hours, and sit for a total of six hours, in an eight-hour workday. (*Id*. at PageID 96-97) She could occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. (*Id*.) She could frequently balance and should never climb ladders ropes, or scaffolds. (*Id*.) She should avoid exposure to hazards such as machinery and heights. (*Id*. at PageID 97-98.)

On November 25, 2019, state agency reviewing physician Dr. Mutchler stated that Plaintiff's subjective complaints about the severity of her symptoms, including pain, were inconsistent with evidence that she had 4/5 strength in her lower left extremities. (Doc. 8-3, PageID 110.) Dr. Mutchler agreed with the limitations identified by Dr. Das except that she limited Plaintiff to occasional balancing. (*Id*. at PageID 112-13.)

## V. LAW AND ANALYSIS

Plaintiff argues that the ALJ's RFC assessment and evaluation of her symptom severity is not supported by substantial evidence because the record documents her difficulties with ambulation, balance and pain, and because the ALJ did not adequately

10

explain his conclusion that Plaintiff could sustain full-time light exertion work given that she needs to use a cane. (Doc. 10, PageID 1118-21.) Plaintiff argues that the ALJ "failed to carry the Step Five burden because his accepted hypothetical question to the vocational expert did not accurately portray [her] limitations." (*Id*. at PageID 1119.) Plaintiff argues that the ALJ erred by relying on the prior administrative findings of state agency reviewing physicians who did not base their opinions on substantial evidence. (*Id*. at PageID 1121.) Finally, Plaintiff argues that the ALJ erred in rejecting the opinion of treating psychiatric mental health nurse practitioner Kelsie Ludwig, PMHNP-BC. (*Id.* at PageID 1122-23.)

The Court agrees that the ALJ erred by failing to consider whether the RFC should include a limitation for ambulating with an assistive device. The Court further finds that the ALJ erred because his finding that Plaintiff's subjective complaints are inconsistent with the record is not supported by substantial evidence. The Court does not address the remaining issues and instead directs the ALJ to address all of them on remand.

A. **Applicable Law**

1. ***Residual functional capacity (RFC)***

A claimant's residual functional capacity (RFC) is the most that she can do in a work setting despite physical and mental limitations caused by her "impairment(s), and any related symptoms, such as pain." 20 C.F.R. § 404.1545(a)(1). The ALJ is charged with the final responsibility for assessing a claimant's RFC and must base it on all relevant evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(1). Relevant

evidence includes "information about the individual's symptoms and any 'medical source statements'—i.e., opinions about what the individual can still do despite his or her impairment(s)—submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p, 1996 SSR LEXIS 5, *5-6 (July 2, 1996). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id*. at *20.

### 2. *Evaluation of symptom severity*

When a claimant alleges symptoms of disabling severity, the Social Security Administration uses a two-step process for evaluating an individual's symptoms. SSR 16-3p, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017).

First, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must make this determination based upon objective medical evidence in the form of medical signs or laboratory findings. *Id*. Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms … and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. The Social Security

Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

13

SSR 16-3p at *7-8; *cf.* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id.* The ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

The ALJ must determine whether an individual's symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8. For example, the ALJ will consider an individual's statements, keeping in mind that those statements may be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id.* at *8-9.

The ALJ will also consider whether the claimant sought medical treatment and followed treatment that was prescribed. SSR 16-3p at *9. Attempts to obtain treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id.* However, the ALJ "will not find an individual's symptoms inconsistent … on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* The ALJ must consider these reasons "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016).

The SSR lists several examples of why individuals may not seek or follow treatment, including side effects from medications, an inability to afford treatment, and an inability to understand the need for treatment due to a mental impairment. *Id*. at *9-10. The ALJ may need to contact the claimant to ascertain the reason(s) for the lack of treatment. *Id*. at *9. The ALJ "***will*** explain how [he or she] considered the individual's reasons" in the evaluation of the individual's symptoms. *Id.* at *10 (emphasis added).

**B.    The ALJ Erred By Failing To Consider Whether The RFC Should Include A Limitation For Using An Assistive Device To Ambulate**

The ALJ did not include a limitation for using an assistive device for ambulation in the RFC. Plaintiff argues that the ALJ erred by finding that she could sustain full-time light exertion work because the evidence showed that she needed to use a cane to ambulate, and vocational expert Mr. Pruitt testified that a cane would preclude light work. (Doc. 10, PageID 1118-19 (citing Doc. 8-2, PageID 84).)

The Court finds that the ALJ erred by failing to consider whether the RFC should include a limitation for using an assistive device to ambulate. Although Plaintiff testified that her cane was "not prescribed," the evidence in the record belies her testimony: in fact, her physician "discussed using a **cane** to help with fall prevention and support." (Doc. 8-3, PageID 93 (emphasis in original).) Her physician prescribed a front-wheeled walker for the same reasons. (Doc. 8-7, PageID 500.)

The ALJ summarized Plaintiff's testimony that "[s]he uses a cane for ambulatory support, although it was not prescribed, and uses a walker when she goes to the hospital."

(Doc. 8-2, PageID 52.) The ALJ primarily considered Plaintiff's use of assistive devices when he considered whether it showed that her impairment rose to the level of a listing:

> … I could not find evidence in the record that the claimant is unable to ambulate effectively. Although the claimant has been prescribed the use of a front-wheeled walker in the past … it is not clear from the record that the claimant actually requires such a device in order to ambulate effectively. As recently as August 2020, the claimant stated that she only uses a "cane as needed" to assist her with walking. It therefore appears that the claimant does not require the use of an assistive device that limits the use of both upper extremities in order to work. The claimant fails to meet the requirements of section 1.02(B) because her complained-of issues do not involve both upper extremities.

(Doc. 8-2, PageID 47.) The ALJ also stated that Plaintiff was "prescribed a walker, but testified that she does not have to use it consistently in order to walk." (*Id*. at PageID 53.)

SSR 96-9p states that a hand-held assistive device is medically required if there is "medical documentation establishing the need for [it] to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." 1996 SSR LEXIS 6, *19 (July 2, 1996). An ALJ's failure to consider whether a claimant's use of a hand-held assistive device is medically required, and so should be included in the RFC, is reversible error. *Penn v. Astrue*, Case No. 2:09-cv-169, 2010 U.S. Dist. LEXIS 12389, *16 (S.D. Ohio Jan. 27, 2010) ("The consistent reference to the use of a cane (or a walker) … is enough to trigger an obligation on the part of the Commissioner to decide if such use is medically necessary and, if so, to have included

that factor in the RFC analysis."); *see also Ethel R. v. Comm'r of Soc. Sec.*, Case No. 1:20-cv-69, 2022 U.S. Dist. LEXIS 11469, *8-9 (S.D. Ohio Jan. 21, 2022) (citing cases).

Here, there is medical documentation that Plaintiff was medically required to use assistive devices, and that described the circumstances of their use. Plaintiff's physician discussed with Plaintiff the use of "a **cane** to help with fall prevention and support." (Doc. 8-3, PageID 93 (emphasis in original).) Plaintiff's physical therapist suggested that she use a walker to reduce her fall risk and pain, and her physician subsequently prescribed a walker. (Doc. 8-7, PageID 500-04, 592.) Plaintiff's physical therapist told her that she would not benefit from physical therapy unless she used assistive devices to avoid falls, allow exercises to be tolerated, and strengthen her pelvis and hips. (Doc. 8-7, PageID 496, 653.) Plaintiff testified that she used assistive devices to keep her from falling; specifically, she used her cane around the house, and a walker for longer distances. (Doc. 8-2, PageID 73, 76-77.)

The ALJ did not consider whether Plaintiff's use of a cane or walker is medically required. Although the ALJ found that Plaintiff does not use a walker all the time, such a finding does not support a conclusion that assistive devices are not medically required. To the contrary, SSR 96-9p recognizes that assistive devices may be medically required even if they are intended to be used periodically. 1996 SSR LEXIS 6, *19 (July 2, 1996). Because the ALJ failed to comply with SSR 96-9p, reversal is required.

**C.     The ALJ's Findings Regarding The Severity of Plaintiff's Symptoms Are Not Supported By Substantial Evidence, And The ALJ Did Not Comply With SSR 16-3p When Evaluating Symptom Severity**

Plaintiff argues that the ALJ's evaluation of her symptom severity is not supported by substantial evidence because the record documents her difficulties with ambulation, balance and pain. (Doc. 10, PageID 1119-21.) The Court agrees.

In his discussion of the medical evidence, the ALJ acknowledged that Plaintiff repeatedly complained of pain in her back and left hip. (Doc. 8-2, PageID 50-51.) The ALJ acknowledged that Plaintiff received multiple lumbar and hip injections to address her complaints of pain. (*Id*. at PageID 51.) The ALJ also acknowledged and summarized Plaintiff's testimony regarding her pain. (*Id*. at PageID 52.)

Nevertheless, the ALJ summarily discounted Plaintiff's complaints of pain. He stated: "To the extent the claimant's subjective complaints of pain and limitation are consistent with the record, I have limited her to performing a reduced range of light exertional work." (Doc. 8-2, PageID 52.) The ALJ explained that he imposed postural limitations "to restrict [Plaintiff] from jobs that involve tasks likely to exacerbate her pain symptoms, or alternatively that her pain symptoms would simply prevent her from effectively undertaking." (*Id*. at PageID 53.)

The ALJ did not explain why he discounted Plaintiff's complaints of pain. The closest that he came to such an explanation is when he stated that her symptoms generally (not just pain) are inconsistent with the evidence because she does not need to use a walker consistently and her physical condition has improved, insofar as she could sit for

fifteen minutes at the time of the hearing but could previously only sit for five minutes at a time. (Doc. 8-2, PageID 53-54.)

The ALJ's findings are not supported by substantial evidence. A reasonable mind would not accept these two data points—that Plaintiff did not use a walker all the time, and that she could now sit for 15 minutes instead of only 5 minutes—as adequate to support the ALJ's conclusion that her subjective complaints of pain were inconsistent with the record.

Moreover, the ALJ's failure to address significant evidence supporting Plaintiff's subjective complaints of pain—including a treatment history that consisted of multiple injections, pain medications and physical therapy—signifies an impermissibly selective review of the record. *E.g.*, *Minor v. Comm'r of Soc. Sec.*, 513 Fed. App'x 417, 435 (6th Cir. 2013) (reversing where "[i]nstead of performing a proper analysis … the ALJ cherry-picked select portions of the medical record to discredit Minor's complaints of pain").

The ALJ also erred because his analysis did not comply with SSR 16-3p. That rule required him to discuss specific factors, including Plaintiff's treatment history, for which there is relevant evidence in the record.  SSR 16-3p at *7-8. The ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. The ALJ did not address the applicable factors or include the required discussion in his decision.

19

In sum, the ALJ erred by finding that Plaintiff's complaints of her symptoms, including but not limited to pain, were inconsistent with the record, as this finding is not supported by substantial evidence. The ALJ also erred because his evaluation of Plaintiff's symptoms did not comply with SSR 16-3p. Both errors require reversal.

## VI.    CONCLUSION

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a

disability and whether her application for Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 10) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.

*/s/ Caroline H. Gentry*_____<br>
Caroline H. Gentry<br>
United States Magistrate Judge

21